IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW KRESSIN,

                 Plaintiff,

    v.

TRACIE A. JOKALA, CITY OF MADISON, and
WISCONSIN MUNICIPAL MUTUAL INSURANCE
COMPANY,

                 Defendants.

OPINION and ORDER

23-cv-136-jdp

---

Plaintiff Andrew Kressin is a former City of Madison police officer. Defendant Tracie Jokala worked in the police department's internal investigations unit. This case arises from a letter that Jokala sent to the local district attorney's office while she was investigating Kressin's conduct as a police officer. The letter contained factual allegations calling into question Kressin's truthfulness and credibility, allegations that Kressin says are false. The letter was subsequently shared with other police departments, which has made it difficult for Kressin to find another job in law enforcement. Kressin alleges in his amended complaint, Dkt. 10, that sharing the letter violated his Fourteenth Amendment rights by preventing him from pursuing his chosen profession as a police officer.

Defendants move to dismiss Kressin's amended complaint, Dkt. 14, contending that because he voluntarily left his job with the Madison police department, he cannot show that defendants terminated him or otherwise changed his legal status. Kressin agrees that he voluntarily left his job, but he contends that he does not need to show a formal change in his legal status if he can show that he was completely foreclosed from future jobs in law enforcement. But Kressin's position cannot be squared with the Seventh Circuit's opinion in

*Hinkle v. White*, 793 F.3d 764 (7th Cir. 2015), which makes clear that some formal change in legal status is a required element of Kressin's claim. The court will grant defendants' motion to dismiss.

BACKGROUND

The court draws the following factual allegations from Kressin's amended complaint, Dkt. 10. At this point in the case, the court accepts Kressin's allegations as true.

While Kressin was working as a Madison police officer, the police department received a complaint that Kressin had failed to respond appropriately to a domestic abuse call. The department initiated an investigation, headed by Jokala. Before the investigation was complete, Kressin voluntarily resigned his position with the department.

Three months after Kressin resigned, Jokala concluded her investigation, determining that Kressin had minimized callers' allegations or otherwise been untruthful in his call notes on several occasions. Based on these conclusions, Jokala sent what the parties refer to as a "Brady letter" to the local district attorney's office, detailing the incidents of alleged untruthfulness. A Brady letter is a letter disclosing information that might benefit the defense in a criminal case. It is typically sent by a prosecutor to defense counsel to fulfill the prosecutor's obligation to disclose potentially exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963), but these disclosure obligations also extend to others on the prosecutorial team, including police departments.  Kressin was not notified before Jokala sent the Brady letter, nor did he receive a hearing giving him the opportunity to defend himself. Kressin believes that if he had received a hearing, he could have shown that the allegations in the Brady letter were false and prevented the letter from being issued.

After the Brady letter was issued, Kressin applied to multiple law enforcement agencies and was told repeatedly that his application could not move forward due to the Brady letter. Kressin alleges that the Brady letter has completely foreclosed his ability to find another job as a police officer.

ANALYSIS

In this case, Kressin asserts his right to occupational liberty. Occupational liberty, or the right to pursue the occupation of one's choice, has long been recognized as one of the rights protected by the Fourteenth Amendment's due process clause. *E.g., Hinkle*, 793 F.3d at 767. A plaintiff who believes his occupational liberty has been violated by a government employer can bring a procedural due process claim under the Fourteenth Amendment. To state such a claim, the plaintiff must show that defendants (1) deprived him of occupational liberty and (2) denied him constitutionally sufficient procedural protections. *Id.* Here, Kressin cannot show that defendants deprived him of occupational liberty.

Kressin's claim for deprivation of occupational liberty is based on reputational damage. But reputational damage *alone*, even if it seriously harms a person's future career prospects, is not enough to state a claim for deprivation of occupational liberty. *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002). Instead, a person alleging deprivation of occupational liberty must show both reputational damage and "alteration of legal status;" that is, the loss of some legal right that the person previously held. *Id.*; *Paul v. Davis*, 424 U.S. 693, 708–09 (1976). This is called the "stigma-plus" test: reputational damage is the "stigma" and alteration of legal status is the "plus." *Hinkle v. White*, 793 F.3d 764 (7th Cir. 2015).

3

Government employees, such as police officers, can show alteration of legal status if they suffered an adverse employment action, such as termination, demotion, or refusal to rehire. *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976). In the absence of any adverse employment action, the court of appeals has repeatedly rejected deprivation of occupational liberty claims for failure to show alteration of legal status. For example, in *Hinkle*, a sheriff was labelled a child molester and arsonist by police department investigators, but the court rejected his deprivation of liberty claim because he had not been terminated or demoted from his existing position. *Hinkle*, 793 F.3d at 765–66, 768. Similarly, in *Roake*, a police officer was accused of drinking on the job and could not find a new position in law enforcement, but the court rejected his deprivation of liberty claim because he had resigned rather than been terminated. *Roake*, 849 F.3d at 347.

Kressin's complaint does not allege that the Madison Police Department took any adverse employment action against him. To the contrary, Kressin affirmatively alleges that he resigned voluntarily because he no longer felt comfortable working for the department, for reasons that pre-date Jokala's investigation.[1] Dkt. 10, ¶¶ 415–16. Because he admits that he resigned, Kressin cannot show any alteration of legal status. He has affirmatively alleged facts that make it impossible for him to establish a required element of his Fourteenth Amendment claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (case must be dismissed if plaintiff affirmatively alleges facts showing he is not entitled to relief). Kressin's amended complaint must be dismissed.

---

[1] Kressin does not allege that his resignation was the result of constructive discharge, and his explanation for the reasons for his resignation would undermine that theory. So the court need not address whether a constructive discharge would be satisfy the alteration of legal status requirement.

4

Kressin contends that he does not need to allege any alteration of legal status if he alleges that he has been completely foreclosed from future employment in law enforcement. He makes two arguments to support this contention, neither of which the court finds persuasive. First, he argues that a recent Seventh Circuit opinion, *Dunn v. Schmitz*, would allow a deprivation of occupational liberty claim without any alteration of legal status. 70 F.4th 379 (7th Cir. 2023). Kressin reads *Dunn* to mean that if an employee can show that he has been completely barred from future employment in his chosen field, no alteration of legal status is required.

But this was not the holding of *Dunn*. The court decided that case on the reputational injury element, concluding that the stigmatizing information had not been disclosed to others. *Id.* at 383–85. The court also held that Dunn failed to adduce evidence that defendants' conduct had foreclosed practically all prospective employment opportunities. *Id.* at 385. The court in *Dunn* did not separately address the alteration of legal status requirement. This court will not infer that the court of appeals intended in *Dunn* to repudiate the principles so clearly expressed in *Hinkle*.

Second, Kressin points to a line of cases holding that placement on a state child abuse registry deprives childcare workers of occupational liberty by effectively barring them from future employment in childcare. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002); *Dupuy*, 397 F.3d at 503. According to Kressin, the childcare cases establish that if a government employee is effectively barred from his chosen profession, no further alteration of legal status is required. But the Seventh Circuit explicitly rejected this interpretation in *Hinkle*, explaining that the alteration of legal status in the childcare cases was not the foreclosure of future employment opportunities, but the placement on the child abuse registry. 793 F.3d at

768. Thus, the childcare cases "do[] not stand for the broader proposition that defamation by state actors which forecloses employment in their field of choice constitutes the denial of a liberty interest." *Id.*

Kressin cannot state a claim for deprivation of occupational liberty without alleging some alteration of legal status. Because Kressin alleges in his amended complaint that he voluntarily resigned, the court will dismiss his Fourteenth Amendment claim against all defendants. Additionally, the court will deny Kressin leave to amend the complaint. A district court may refuse leave to amend where amendment would be futile. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012). Here, amendment would be futile because Kressin's complaint already alleges facts that foreclose any possibility that his constitutional claim could prevail.

The defendants also move the court to dismiss the claims that the City of Madison and Wisconsin Municipal Mutual Insurance Company are liable for Jokala's alleged constitutional violation. Because the court will dismiss the underlying constitutional claim, it will also dismiss these derivative claims.

ORDER

IT IS ORDERED that:

1.  Defendants Tracie A. Jokala, City of Madison, and Wisconsin Municipal Mutual Insurance Company's motion to dismiss, Dkt. 14, is GRANTED.

2.  The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered January 25, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge